# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

THERESE E. MCKAY,

     Petitioner,

     vs.

MICHAEL J. ASTRUE, Commissioner of the
United States Social Security Administration,

     Respondent.

Case No.: 1:10-CV-00214-REB

**MEMORANDUM DECISION
AND ORDER**

Pending before the Court is Therese E. McKay's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On October 23, 2006, Therese E. McKay ("Petitioner") filed a Title II application for a period of disability and for disability insurance benefits. (AR 11). She originally alleged a disability onset date of October 7, 2003, and later amended that date to June 17, 2005. (AR 29). Petitioner's application was denied initially on January 25, 2007 (AR 86) and again, upon reconsideration, on June 25, 2007. (AR 88). Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (AR 98-99). On April 28, 2009, ALJ Michael A. Kilroy held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Hugh V.

**MEMORANDUM DECISION AND ORDER - 1**

Mossman, appeared and testified. (AR 11). James Bruce, Ph.D., an impartial medical expert, and Anne Aastum, an impartial vocational expert, also appeared and testified at the hearing. (AR 71-84). David McKay, Petitioner's husband, was present at the hearing, but did not testify. (AR 25).

On August 31, 2009, the ALJ issued a decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. (AR 8-22). Petitioner timely requested an Appeals Council review of the ALJ's decision; the Appeals Council denied review on March 2, 2010, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1-4).

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that the ALJ's "decision is not supported by substantial evidence and is inconsistent with statutory and case law authority." *See* Brief in Supp. of Pet. for Review, p. 7 (Docket No. 12). Specifically, Petitioner asserts that: (1) the ALJ's findings rejecting Petitioner's credibility are not supported by the record, (2) the ALJ improperly rejected the testimony of Dr. Grant Belnap and Bette Carlson, LCSW, (3) the ALJ failed to adequately consider the lay statement of David McKay, and (4) the ALJ's findings with respect to Petitioner's residual functional capacity are not supported by the evidence. *Id.* Petitioner requests that the Court reverse the ALJ's decision and remand the case for an immediate award of benefits. *Id.* at 17.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* "But the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.    Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process when determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a),

416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner "did not engage in substantial gainful activity during the period from her amended alleged onset date of June 17, 2005 through her date last insured of June 30, 2008."  (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe combination of impairments: (1) depression, (2) anxiety, (3) hypothyroidism, (4) lupus, and (5) fibromyalgia.  (AR 13).

**MEMORANDUM DECISION AND ORDER - 5**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 16-17).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except as follows: (1) she could lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she could alternate through walking, standing, and sitting for an 8-hour period of time, with the limitation that she could walk 1 mile maximum at one time, stand 1 hour maximum at one time, and sit 1

hour maximum at one time; (3) she could not climb ladders or scaffolding, but she could occasionally climb stairs; (4) she could perform all other postural activities occasionally, if not frequently; (5) she should avoid concentrated exposure to vibrations or hazards; (6) she could frequently tolerate brief and superficial contact with the public, and one-on-one contact; (7) she could occasionally interact with small numbers of the public; (8) she had the ability to work with a few co-workers, though preferably not in a place with so many that it became distracting, or in a place where the activity of the co-workers was such that it was a distracting type of place in which to work; (9) she could tolerate supervision so long as it was not constant or over-the-shoulder; (10) she could perform unskilled and semi-skilled routine jobs, as well as jobs that involved occasional new learning; and (11) she should avoid work which required high constant focus or high constant stress.  (AR 17-18).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Petitioner was able to perform past relevant work as a data entry clerk and as a general clerk; therefore, the ALJ did not address whether Petitioner is able to do other work.  (AR 21).

**MEMORANDUM DECISION AND ORDER - 7**

**B.** **Analysis**

      1.    <u>Petitioner's Credibility</u>

      Petitioner challenges the ALJ's conclusion that Petitioner's statements concerning the intensity, persistence and limiting effects of her symptoms are not credible to the extent they are inconsistent with his findings as to her residual functional capacity. *See* Brief in Supp. of Pet. for Review, pp. 7-12 (Docket No. 12).

      In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptoms she alleges; she need only show that it could reasonably have caused some degree of the symptoms." *Id.* (citing *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if the claimant meets the first step of the analysis, and there is no evidence of malingering, then the ALJ can only reject the claimant's testimony about the severity of the symptoms "by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1281). The reasons the ALJ gives for rejecting a petitioner's testimony must be supported by substantial evidence in the record. *Reginnetter v. Cmm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's finding, the Court will not engage in second-guessing. *Thomas v. Barnhart,* 278 F.3d 957, 959 (9th Cir. 2002).

When determining credibility, the ALJ may consider: "(1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence." *Id.* at 1040. *See also, Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997) (stating claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms are all properly considered by an ALJ in a credibility determination).

In this case, the ALJ determined that Petitioner met step one of the analysis: her medically determined impairments could reasonably be expected to cause some degree of the alleged symptoms. Additionally, the ALJ did not find malingering. Petitioner argues that, at step two of his analysis, the ALJ did not provide the requisite specific, clear and convincing reasons for rejecting her testimony, and that the reasons he did provide are not supported by the record.

Specifically, Petitioner argues that it was improper for the ALJ to consider her manner and demeanor at the hearing as a basis for rejecting her testimony as to the severity of her symptoms because the way in which fatigue and stress affect manner and demeanor is not within the ALJ's realm of expertise. Petitioner also argues that the ALJ's statement that Petitioner had no extensive treatment for her mental and physical impairments is not accurate and is not supported by the record.

An ALJ may not base a credibility determination solely on observation of a petitioner's manner and demeanor when the petitioner's complaints of impairment are substantiated by uncontradicted objective evidence. *Id.; see also Coats v. Heckler*, 733 F.2d 1338, 1341 (9th Cir.

1984).  However, if the record contains contradictory evidence, the ALJ may question the

petitioner's credibility so long as that finding is supported by substantial evidence.  *See Morgan*

*v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Additionally, an ALJ's

observations do not render his decision improper when his decision is only partially based on

those observations.  *See Morgan*, 169 F.3d at 600 (9th Cir. 1999); *Sellard v. Shalala*, 37 F.3d

1506, *3 (9th Cir. 1994); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (stating that

ALJ's inclusion of personal observation was not improper when ALJ also considered Petitioner's

testimony, opinions of treating and examining physicians, and objective medical evidence).

Here, the ALJ's decision included one sentence indicating that his personal observations

factored into his decision:

> While significant mental work-related limitations have been imposed due to her mental
> impairments and symptoms, the claimant's manner and demeanor was not convincing
> that she suffers from marked incapacitation due to fatigue and stress.

(AR 19).  In the same analysis, the ALJ discusses examining physician Dr. McClay's opinion

that Petitioner's claim that she is "extremely disturbed" might be exaggerated, and that treating

physician Dr. Belnap's "available treatment notes did not support a conclusion that she had

marked or extreme functional loss due to her depression or anxiety."  (AR 19).  The ALJ also

discusses Petitioner's testimony regarding her periodic travel and her daily activities; he notes

her daily activities are typical of most people.  (AR 20).

His written decision makes clear that the ALJ based his credibility determination on more

than just his observation of Petitioner at the hearing.  Though he uses the words "fatigue and

stress" in conjunction with his observation of Petitioner's manner and demeanor, the Court finds

that, in the broader context of his decision, it is apparent that the ALJ was not making a medical

judgment, but, instead, was considering Petitioner's physical manner and demeanor as one of

**MEMORANDUM DECISION AND ORDER - 10**

several considerations in his overall evaluation.  In this context, the Court is satisfied that the ALJ properly incorporated his observations.

While the ALJ's decision does state that Petitioner had not been prescribed "extensive pain medication" and that physical evaluations of her had not suggested "extensive restrictions", the decision does not state that she "had no extensive treatment for mental health", as is argued by Petitioner.  (AR 19).  When determining credibility, an ALJ properly considers whether a petitioner takes medication or undergoes other treatment.  *Smolen v. Chater,* 80 F.3d at 1282.  In this case, the ALJ discusses the Petitioner's treatment records and the opinions of her treating psychiatrist and counselor.  (AR 19-20).  He also notes that Petitioner did not require in-patient psychiatric care or an intervention during the relevant time period, "which might be expected if she were extremely disturbed and had marked functional loss."  (AR 20).  He notes that she benefitted from outpatient treatment and responded well to medication adjustments despite dealing with various stressors.  (AR 20).

However, while the Court finds that the ALJ offered multiple specific, clear and convincing explanations as to why he did not find Petitioner's testimony entirely credible, the Court also finds that the ALJ made some improper credibility determinations.  The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."  *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001); *Fair v. Bowen*, 260 F.2d 597, 603 (9th Cir. 1989).  One does not need to be "utterly incapacitated" in order to be disabled. *Id.*

In this instance, the ALJ's decision specifically found that "[d]espite her subjective complaints of extreme fatigue and stress, the claimant's daily activities are typical of most individuals, including watching TV, reading, using the computer and doing household chores." (AR 20). In reviewing this particular aspect of the ALJ's decision, the Court is mindful that Congress designed the Social Security Act to be "unusually protective of claimants," *Bowen v. City of New York*, 476 U.S. 467, 480 (1986) (quoting *Heckler v. Day,* 467 U.S. 104, 106 (1984)), and the Ninth Circuit is clear that the fact that a petitioner has carried on the activities of daily life should not detract from her credibility as to her overall disability. In this instance, it appears the ALJ inappropriately made that exact determination: his credibility determination was improperly swayed by Petitioner's ability to perform many of the typical functions of daily life, and did so in a way that gave insufficient heed to the tenuous grasp that Petitioner had upon such functions, in the face of her mental illness.

2. Petitioner's Medical Providers' Opinions

The ALJ rejected the medical opinion that suggested Petitioner maintained a covered disability, even though that opinion originated from Dr. Belnap, who had been Petitioner's treating physician. The ALJ relied instead on other medical evidence of record, including evidence from other medical experts and a non-treating vocational assessment.

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id.* Where the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating

**MEMORANDUM DECISION AND ORDER - 12**

physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ

provides specific and legitimate reasons for doing so, which, in turn, are supported by substantial

evidence in the record. *Id.* Regardless, a treating physician's opinion on the ultimate issue of

disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P,

1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding

[whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20

C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or

decision about whether you meet the statutory definition of disability.").

Therefore, the fact that a particular physician is a treating physician does not mandate the

adoption of that physician's opinions in regard to ultimate determinations of statutory disability.

In addition to the standard outlined above, treating physician's opinions are given less weight if

they are inconsistent with the record as a whole or if the conclusions consist of vague,

conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d

801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)

(lack of objective medical findings, treatment notes, and rationale to support treating physician's

opinion is sufficient reason for rejecting that opinion).

Dr. Belnap was Petitioner's treating psychiatrist for the entire relevant period. The

record includes: his treatment notes (AR 567-576); his February 26, 2008 affidavit declaring his

opinion that Petitioner experienced three episodes of decompensation, each of an extended

duration, and that she is disabled as contemplated by the Social Security Act (AR 645-660); his

March 18, 2009 statement reaffirming his opinion of her disability (AR 796); his May 20, 2009

letter stating his opinion that Petitioner is disabled and that he does not anticipate her ever being

able to gain sustainable employment (AR 713-715); and his April 3, 2009 letter indicating that

his office experienced a computer crash which resulted in the loss of medical records from

September 15, 2007 through January 19, 2009 (AR 709).  Recognizing that Dr. Belnap is the

treating psychiatrist in this case, the ALJ declined to adopt his opinion, following instead the

opinions of Dr. Bruce, the testifying medical expert at the April 28, 2009 hearing, and Dr. Martin

Seidenfeld, an examining psychologist. The ALJ stated:

> Dr. Belnap is the treating psychiatrist in this case and his opinions were carefully
> considered in conjunction with all the other evidence of record. In Exhibit 23F, Dr.
> Belnap opined the claimant's mental limitations are all marked in degree and that she has
> had three episodes of decompensation, each of extended duration. [The ALJ] agrees with
> the medical expert that the claimant's mental limitations are not marked in degree and are
> not supported by Dr. Belnap's treatment notes. Dr. Belnap also did not support his
> opinion that the claimant had three episodes of decompensation, each of extended
> duration, in the time period at issue.

(Ar 20).

As an initial matter, the Petitioner has the burden of proving that she became disabled

before the expiration of her disability insured status. *Macri v. Chater,* 93 F.3d 540, 543 (9th Cir.

1996).  While a treating physician's opinion is typically given special consideration and weight

when expressed in conjunction with a petitioner's attempt to meet this burden, it is appropriately

given less weight if it is inconsistent with the record as a whole or if the opinion consists of

vague, conclusory statements unsupported by medically acceptable data.  In this instance, Dr.

Belnap's affidavit testimony opining that Petitioner's mental limitations are all marked in degree

and that Petitioner experienced three episodes of decompensation is not supported by other notes

**MEMORANDUM DECISION AND ORDER - 14**

or data.[1]  Dr. Belnap's affidavit is the kind of vague and conclusory evidence that is properly given less weight by an ALJ.

Moreover, Dr. Belnap's opinion is inconsistent with other medical evidence in the record. The ALJ relied heavily on the testimony of examining psychologist Dr. Seidenfeld and medical expert Dr. Bruce.  Dr. Seidenfeld examined Petitioner on December 26, 2006.  (AR 533-542). His notes indicate he found her to be an intelligent woman capable of carrying out most instructions, but whose energy was low which would, in turn, slow down her rate of functioning. (AR 541).  He stated that she "could probably carry out routine tasks fairly well."  (AR 541).  He found her Global Assessment of Functioning (GAF) to be 55.  (AR 541).

Dr. Bruce testified that, according to his review of the entire record, Petitioner did not qualify as disabled.  (AR 74).  He testified that her mental abilities fluctuated between mildly impaired to marked, depending on her mental state.  (AR 75-76).  He indicated that she was "on the edge...but...as far as her mental functioning, she appears to have some resiliency."  (AR 76).

Petitioner argues that the ALJ inaccurately characterized Dr. Bruce's testimony, and that his testimony actually indicated that the record supported a finding of disability for Petitioner. Brief in Supp. of Pet. for Review, p. 12-13 (Docket No. 12).  However, this Court finds that the ALJ's characterization of Dr. Bruce's testimony is not inaccurate and that he properly premised his reliance on Dr. Bruce's testimony, particularly in light of his conclusion that Dr. Belnap's

---

[1] The record includes Dr. Belnap's statement that his practice lost sixteen months of medical records in a computer crash.  Despite the loss of these medical records, the record indicates that Petitioner saw Dr. Belnap no less than twice a year, and as often as once a month for short periods of time, over the course of six years.  (AR 567-576).  The loss of records aligns with approximately the final 9.5 months of Petitioner's claim period.

**MEMORANDUM DECISION AND ORDER - 15**

opinions were not entitled to substantial weight, as vague and conclusory. Moreover, the ALJ's reliance on the opinion of the other medical experts is supported by substantial evidence in the record. Accordingly, the manner in which the ALJ considered Dr. Belnap's opinion was proper within the realm of discretion afforded to the ALJ.

### 3. Lay Testimony

In addition to medical professionals, an ALJ may properly consider the opinions of private or public social welfare agency personnel and family members in determining the severity of a petitioner's impairment. 20 C.F.R. § 404.1523(d)(3)-(4). Such lay testimony as to a petitioner's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives germane reasons for doing so. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Id.*

#### a. *Bette Carlson, LCSW*

Bette Carlson was Petitioner's Licensed Clinical Social Worker for the entire relevant time period. (AR 637-644). The record includes Ms. Carlson's opinion that Petitioner's "condition is chronic and any expectation of a return to employment is not realistic." (AR 637). As to Ms. Carlson's opinion, the ALJ stated:

> The undersigned also placed little weight on Ms. Carlson's opinion that the claimant is disabled because this was quite conclusory, was unsupported by substantive mental clinical findings, and was based heavily on the claimant's subjective complaints. As an example, Ms. Carlson listed a GAF score of only 35, which was based heavily, if not entirely, on the claimant's subjective complaints and included consideration of fibromyalgia and lupus which are not within Ms. Carlson's area of expertise. Further, her opinion is inconsistent with other substantial evidence from Dr. Seidenfeld.

**MEMORANDUM DECISION AND ORDER - 16**

(AR 20).  The ALJ rejected Ms. Carlson's opinion for at least two germane reasons: she

considered the effects of lupus and fibromyalgia which are outside her realm of expertise, and

her opinion conflicted with substantial medical evidence in the record.  The ALJ's decision

indicates that he considered Ms. Carlson's opinion, but rejected it for germane reasons, even if

those reasons might easily have supported a different conclusion.

<blockquote>

b.      *David McKay*

</blockquote>

David McKay, Petitioner's husband, provided the ALJ with a written statement at the

April 28, 2009 hearing.  (AR 21).  Petitioner argues that the statement was proper lay opinion

evidence yet it was not considered by the ALJ.  The Court agrees that Mr. McKay's statement is

a properly considered lay opinion; however, contrary to the Petitioner's argument, the Court

finds that the ALJ did consider the opinion.  In his decision, the ALJ summarizes Mr. McKay's

statement and then states:

> Mr. McKay's statement was given minimal weight in determining her residual functional
> capacity because it was a recitation of the claimant's subjective complaints of extreme
> fatigue, which are overstated and are not being credited.

(AR 21).  The ALJ's decision indicates that he considered, but rejected, Mr. McKay's opinion.

While it is within the ALJ's discretion to reject Mr. McKay's lay opinion, it is inappropriately

rejected if the ALJ does not provide germane reasons for doing so.  Here, the ALJ simply states

that Mr. McKay's letter is a recitation of Mrs. McKay's subjective complaints.  The ALJ's

reasoning does not acknowledge that Mr. McKay's opinion is independent of Mrs. McKay.  For

this reason, the Court finds the ALJ's summary dismissal of Mr. McKay's lay opinion is not

accompanied by the proper germane reasons for that rejection.   In the Court's reading of this record, the only potential reason for rejecting Mr. McKay's testimony would be the purported bias that any spouse of a claimant might have – to gain some additional money for the household budget.  However, Mr. McKay's testimony is not so baldly conclusory as to support the underlying cynicism of such a justification.  Rather, his testimony contains particulars about the difficulties his wife had been having in her daily functioning, and it describes how there had been progressive deterioration in her ability to maintain such functions over time.  In the context of the Petitioner's particular mental illness, his testimony corroborates the evidence provided by the treating physician, and should not be discounted so perfunctorily.

     4.   <u>Residual Functional Capacity</u>

An applicant's residual functional capacity is an assessment of that individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis; in other words, what an individual can still do despite her limitations.  *See* SSR 96-8P, 1996 WL 374184.  In assessing an applicant's residual functional capacity, the ALJ must consider all of the relevant evidence in the case record, including information about the individual's symptoms and any "medical source statements" submitted by an individual's treating source or other acceptable medical sources.  *See id.*  In conducting a residual functional capacity assessment, an ALJ must also propound a hypothetical to a vocational expert that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations.  *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001).  However, in his overall assessment and the hypothetical, the ALJ need not consider those

**MEMORANDUM DECISION AND ORDER - 18**

limitations which depend on the petitioner's subjective complaints *if* petitioner's complaints have not been deemed credible. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, Petitioner argues that the ALJ did not consider all of the relevant evidence in the record and that the vocational expert's testimony indicates that the Petitioner would not be able to perform any past work or any alternate work in the national economy.

Considering all of the relevant evidence, including the conflicting medical evidence, the ALJ found that the Petitioner was able to perform past relevant work as a data entry clerk and a general clerk. (AR 17-22). In making that determination, the ALJ was not required to consider those limitations that he had already determined not to be credible, i.e., the limitations alleged as a result of Petitioner's subjective complaints.

The Court is not persuaded by Petitioner's argument regarding the vocational expert's testimony. In response to the second hypothetical posed by the ALJ, the vocational expert testified that it was her opinion that Petitioner could work as a data entry clerk and a general clerk. (AR 81-83). While she did not name other specific positions, the vocational expert also stated that she could name other appropriate sedentary and light occupations for Petitioner. (AR 83). It was these opinions that the ALJ used as a basis for his residual functional capacity assessment findings. (AR 17-22).

5.      <u>Paragraph C Criteria</u>

Disability in social security cases can be established by meeting or equaling the criteria of any impairment in the Commissioner's Listing of Impairments. (20 C.F.R. § 404, Sub pt. P, App.1). The criteria are commonly referred to as paragraph B criteria and paragraph C criteria. Paragraph B criteria require a claimant to show that she experienced marked limitations in at least two of the four B criteria. (20 C.F.R. § 404, Sub pt. P, App. 1, §§ 12.04(B)). If the B criteria are not met, a claimant may nevertheless be found disabled under paragraph C criteria. The C criteria require a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) repeated episodes of decompensation each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years in ability to function outside a highly supportive living arrangement, with an indication of continued need for such arrangement. *Id.*

In this case, the ALJ provided support for his conclusion that Petitioner did not qualify as disabled pursuant to the paragraph B criteria. However, as to why she does not qualify under paragraph C criteria, the ALJ simply stated the following: "The undersigned has also considered whether the 'paragraph C' criteria were satisfied. Based on the evidence and testimony of the

medical expert, the evidence fails to establish the presence of the 'paragraph C' criteria under mental disorder listings 12.04 and 12.06." (AR 17).

Upon review of the record, the Court finds that the first element of the paragraph C criteria is satisfied: the Petitioner has a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support. The ALJ's decision does not acknowledge or address this.

Additionally, the Court notes that the second element of a finding of disability under paragraph C is supported by the record via the opinions of Dr. Belnap (AR 714); Mr. McKay (AR 228); and Bette Carlson, LCSW. (AR 637-644). Their opinions each support a finding of disability under paragraph C, subpart (2): a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. Not only does the ALJ's decision not provide the specific and legitimate reasons, which must, in turn, be supported by substantial evidence in the record, that are required in order to reject Dr. Belnap's opinion, it also does not provide the requisite germane reasons for rejecting the lay opinions of Mr. McKay and Ms. Carlson. In fact, his decision does not acknowledge these opinions in the paragraph C context.

The Court finds the ALJ's decision particularly lacking in paragraph C criteria analysis especially in the face of other evidence in the Record which indicates that Petitioner was close to qualifying under paragraph C. Specifically, in answering a question from the ALJ about whether

the Petitioner's claim met the C listing criteria in regard to limitations stemming from her mental illness, Dr. Bruce said: "[s]he's on the edge." Dr. Bruce was the hearing medical expert upon whose opinion the ALJ relied so heavily; however, his decision's paragraph C analysis does not acknowledge this aspect of Dr. Bruce's opinion. The ALJ's decision cannot be made simply by isolating a specific quantum of supporting evidence and ignoring other evidence. *See Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). This is particularly troublesome on the record of this case, where even Dr. Bruce–who had never seen, nor treated the Petitioner–characterized her condition as "on the edge." The ALJ's decision on this particular aspect of the disability claim, especially in the task of assessing medical evidence on a claimant suffering schizophrenia, is inadequate.

Accordingly, while the ALJ may have provided the requisite reasons for rejecting medical and lay testimony related to his paragraph B analysis, the Court finds the ALJ has not provided the requisite reasons for rejecting the testimony in the record which supports a finding of disability under paragraph C criteria.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen v. Heckler*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample v. Schweiker*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key v. Heckler*, 754 F.2d at 1549.

However, the ALJ is held to certain confines when determining a Petitioner's credibility. Here, when discrediting Petitioner's credibility, the ALJ improperly considered Petitioner's ability to participate in activities typical of daily life.

Additionally, the ALJ is held to certain standards when rejecting medical and lay opinion testimony in the record. In this instance, the ALJ did not provide specific and legitimate reasons for rejecting Dr. Belnap's opinion as to Petitioner's disability qualification under the paragraph C(2) criteria, an opinion which indicates Petitioner would qualify under that criteria. As to the lay opinions of Bette Carlson and Mr. McKay, the ALJ did not explain whether he expressly determined to disregard them in the paragraph C(2) context nor did he provide germane reasons for doing so.

This action is therefore remanded to allow the ALJ to revisit the record, specifically those records related to Petitioner's credibility and her possible paragraph C(2) disability qualification.

## V. ORDER

Based on the foregoing, Petitioner's request for review (Docket No. 1) is hereby GRANTED. This matter is remanded pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED: **September 30, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**